**PART 1 OF 3**

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT | DOCKET NO. 13-1698C |
|---|---|---|
| | COUNTY OF | WORCESTER |

| PLAINTIFF(S) Lynne A. Rhodes | DEFENDANT(S) Ocwen Loan Servicing, LLC, OPTION ONE MORTGAGE CORP., Sand Canyon Corporation FKA Option One Mortgage |
|---|---|
| Type Plaintiff's Attorney name, Address, City/State/Zip Phone Number and BBO# | Type Defendant's Attorney Name, Address, City/State/Zip Phone Number (If Known) |

| Elana M. Gordon, Esq. BBO 684107<br>119R Bradford Street Ext<br>PO Box 529<br>Provincetown, MA 02657<br>Tel: (774) 538-6152 | |
|---|---|

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| D99 | Other Equitable Remedies (specify) - Fast Track | | ◉ ] Yes   ○ ] No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses                                    $_____
2. Total doctor expenses                                      $_____
3. Total chiropractic expenses                                $_____
4. Total physical therapy expenses                            $_____
5. Total other expenses (describe)                            $_____

**FILED**

**SEP 23 2013**    Subtotal    $_____

ATTEST: _Del Hull_    CLERK

B. Documented lost wages and compensation to date             $_____
C. Documented property damages to date                        $_____
D. Reasonably anticipated future medical expenses             $_____
E. Reasonably anticipated lost wages and compensation to date $_____
F. Other documented items of damages (describe)               $_____

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

Total $_____

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Plaintiff has been targeted, intimidated, threatened and harassed by Ocwen Loan Servicing, LLC, as the alleged new loan servicer to her mortgage and loan, which originated with OPTION ONE MORTGAGE CORP. Ocwen severed her plumbing pipes, comes to P's home

**TOTAL** $264,578

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

A true copy by photostatic process

Attest:

**Asst. Clerk**

Signature of Attorney of Record _____    Date: ____ 9/23/13

A.O.S.C. 3-2007

CK 9/23/13

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS

SUPERIOR COURT
DOCKET NO.:
13-1698 C

|  |  |
|---|---|
| LYNNE A. RHODES, ) | |
| PLAINTIFF ) | **FILED** |
| ) | |
| V. ) | SEP 23 2013 |
| ) | ATTEST: _____ CLERK |
| Ocwen Loan Servicing, LLC, ) | |
| OPTION ONE MORTGAGE CORP., ) | |
| Sand Canyon Corporation FKA Option ) | |
| One Mortgage Corporation, and ) | |
| U.S. Bank National Association, ) | |
| as Trustee for Structured Asset Securities ) | |
| Corporation, ) | |
| DEFENDANTS ) | |

## VERIFIED COMPLAINT AND JURY DEMAND

Elana M. Gordon, Esq., of the Law Office Of Elana Mikelus Gordon, with an office

located at 119R Bradford Street Extension, PO Box 529, Provincetown, Barnstable County,

Massachusetts 02657, Attorney for the Plaintiff, Lynne A. Rhodes (hereinafter "Ms. Rhodes"),

allege the following:

## GRAVAMEN OF PLAINTIFF'S COMPLAINT

The Gravamen of Plaintiff, Ms. Rhodes, verified complaint alleges that her mortgage

given to OPTION ONE MORTGAGE CORP., recorded on August 21, 2006, with the Worcester

Northern Registry of Deeds, in Book 6214, Page 206 (Exhibit A), assigned to U.S. Bank

National Association, as Trustee for Structured Asset Securities Corporation as assignee, by

Sand Canyon Corporation (hereinafter "Sand Canyon"), FKA Option One Mortgage

Corporation, dated December 2, 2010, recorded on February 15, 2011, in said Deeds, Book 7362, Page 70, as assignor. (Exhibit B).

On or about November 10, 2008, the Suffolk County Superior Court issued a decision wit conclusions of law respective the Commonwealth's complaint as Plaintiff against H&R BLOCK, INC., BLOCK FINANCIAL CORP., OPTION ONE MORTGAGE CORP. (hereinafter "Option One"), *et al.*, issued a preliminary injunction as to Option One, restricting their abilities to assign the loans or servicing rights, and that if assigned the assignee agrees in the written assignment to be governed by the terms of the Preliminary Injunction and its obligations. *See, Commonwealth v. H&R BLOCK, INC.*, SUCV Docket No.: 08-2474-BLS1.

Accordingly, in spite of such Preliminary Injunction and Order as stated above, the purported assignee, U.S. Bank National Association (hereinafter "US Bank"), as Trustee for Structured Asset Securities Corporation, blatantly disregarded such injunction and order, and filed an Order Of Notice, with the Land Court Department of the Trial Court recorded on May 16, 2011, in Book 7408, Page 338 (Exhibit C), and as a direct and proximate result of Sand Canyon's assignment to US Bank, which the above-mentioned Order clearly stated such assignee would be bound to the terms of such assignment, ignored same as a matter of fact and law.

Moving forward, respective to Ms. Rhodes loan being sold to Ocwen Loan Servicing, LLC (hereinafter "Ocwen"), Ms. Rhodes lacks sufficient information respective to such change in her respective loan servicer, as she was never notified in writing with regard to such sale of her loan. Nevertheless, in or around March 2013, Ms. Rhodes received correspondence from Ocwen. Since that time, Ocwen began harassing and intimidating Ms. Rhodes by way of conduct so severe, extreme, and outrageous, their actions have caused substantial harm. Ocwen has engaged and continues to engage in conduct so unconscionable, their conduct raises an

*"objectionable...level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce."* *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979). Specifically, Ocwen has taken it upon themselves to cut Ms. Rhodes' water pipes and lines to her home, leaving her home uninhabitable, without any potable water; has changed locks to her premises; and in an effort to further harass and intimidate Ms. Rhodes, engages in debt collection practices by way of appearing at her residence at 4:00 a.m. in the morning (Copies corroborating the same are attached hereto as Exhibits D through M).

Lastly, Ocwen failed, and continues to fail to comply with not only Federal statutory guidelines, as more fully described below, but also violated the Massachusetts Attorney General, Martha Coakley's regulations with regard to Fair Debt Collection Practices Act under 940 CMR §7.01, *et seq.*, 209 CMR 18.01, *et seq.*, G.L. c. 93, §24A, G.L. c. 93A, §2, *et seq.*, including but not limited to 15 U.S.C. §1692, *et seq.*, among others.

<u>INTRODUCTION</u>

1.  Plaintiff, Ms. Rhodes, brings this action under the unfair and deceptive Fair Debt Collection Practices Act (hereinafter "FDCPA") to secure preliminary and permanent injunctive relief, rescission of contracts, restitution, disgorgement, and other equitable relief for Defendants' unfair or deceptive acts or practices in connection with administering faulty mortgages, loans and services in violation of the FDCPA 15 U.S.C. §1692, *et seq.*, the Commonwealth of Massachusetts Attorney General, Martha Coakley's Regulations under 940 CMR §7.01, *et seq.*; 209 CMR §18.01, *et seq.;* The Massachusetts Consumer Protection Act under G.L. c. 93A, §2, *et seq.*; The Massachusetts Home Loan Predatory Act under G.L. c. 183C, §1, *et seq.*; 209 CMR 32.01, *et seq.*; G.L. c. 255E, §§3 and 4; 209 CMR §42.01, *et seq.*; G.L. c. 223A, §3, *et seq.*; Regulation of Trade and

Certain Enterprises under G.L. c. 93, §24A; Truth In Lending Act, under G.L. c. 140D, §1, *et seq.*; G.L. c. 244, §14; G.L. c. 244, §§35A and 35B, among others.

JURISDICTION AND VENUE

2.  Venue is proper pursuant to G.L. c. 223, §1 and c. 214, §5.

THE PARTIES

3.  Plaintiff, Lynne A. Rhodes, possesses and owns the property which that is the subject matter of the herein litigation.  The property is located at 234 Daniels Street, Fitchburg, Worcester County, Massachusetts 01420 (hereinafter "the Property").

4.  The Defendant loan servicer, Ocwen Loan Servicing, LLC ("Ocwen," *supra*), is a limited liability company organized under the laws of the State of Delaware, registered with the Massachusetts Secretary of State's Corporations Division on May 15, 2002, as a foreign limited liability company, with a principal office located at, 1661 Worthington Road, Suite 100, West Palm Beach, Palm Beach County, Florida 33409.  Its Registered Agent in the Commonwealth of Massachusetts is CORPORATION SERVICE COMPANY, with an address of 84 State Street, Boston, Suffolk County, Massachusetts 02109. Ocwen is registered and licensed to do business in the Commonwealth of Massachusetts as a loan servicer with National Mortgage Licensing System (hereinafter "NMLS") (See Exhibit N and Exhibit O).

5.  The Defendant OPTION ONE MORTGAGE CORP. ("Option One," *supra*), originally registered as a foreign corporation on December 13, 1993, organized under the laws of the State of California on November 3, 1992, which registration was withdrawn on July 21, 2008, with a principal office located at 6501 Irvine Center Drive, Irvine, Orange

County, California  92618, and a former Massachusetts location of 200 Foxborough Boulevard, Foxborough, Norfolk County, Massachusetts 02035.  Its Registered Agent was CT CORPORATION SYSTEM, located at 155 Federal Street, Suite 700, Boston, Suffolk County, Massachusetts  02110 (Exhibit P).

6.      The Defendant OPTION ONE MORTGAGE CORPORATION (INDIA) ("Option One," *supra*), registered as a foreign corporation on May 9, 2008, organized under the laws of India on December 21, 2005, with a foreign address of TOWER VI – LEVEL 4 CYBERCITY MAGARPATTA CITY, HADAPSAR, PUNE, MAHARASHTRA, 411 013 IND; with a Massachusetts location of 155 Federal Street, Boston, Suffolk County, Massachusetts 02110.  Its Registered Agent is CT CORPORATION SYSTEM, located at 155 Federal Street, Boston, Suffolk County, Massachusetts 02110.  (Exhibit Q).  Option One is purportedly registered and licensed with NMLS to do business in the Commonwealth of Massachusetts.  (Exhibit R).

7.      The Defendant, Sand Canyon Corporation, allegedly FKA Option one Mortgage Corporation (reference is made to Exhibit B, *supra*, herein), is not registered with the Massachusetts Secretary of State's Office, nor are they registered with NMLS registered and licensed to do business in the Commonwealth of Massachusetts.  (Exhibit S and Exhibit T, respectively).

8.      The Defendant, U.S. Bank National Association is not registered with the Massachusetts Secretary of States Office Corporations Division, nor are they registered and licensed with NMLS to do business in the Commonwealth of Massachusetts (Exhibit U).  As such, Plaintiff is unable to provide an accurate address for US Bank, excepting the address provided in the Assignment Of Mortgage, which is U.S. Bank National Association, as

Trustee for Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-BC6, c/o American Home Mortgage Servicing, Inc., located at 1525 South Beltline Road, Coppell, TX 75019 (Please see Exhibit B, referenced above and Exhibit U, Exhibit V, and Exhibit X).

<u>DEFENDANT, OPTION ONE AND ITS ASSIGNEES' UNFAIR AND<br>DECEPTIVE BUSINESS PRACTICES</u>

9.  The Defendant, Option One, its assignee, US Bank (reference is made to the above-mentioned Exhibits attached to Plaintiff's herein verified complaint), including but not limited to Ocwen and others, have failed to comply with the Suffolk Superior Court's Order in accord with granting an Injunction to those homeowners whose mortgages originated with Option One, pursuant to SUCV Docket No.: 08-2474-BLS1, which Order clearly stated such assignee would be bound to the terms of such assignment, i.e., honor the terms of the injunction granted respective to foreclosure proceedings.

10. Rather, as is indicative from Exhibit C, referenced above, US Bank, blatantly failed to comply with such Order of the Honorable Court as assignee to Option One, its assignor, by refusing to dignify such Order, and commencing foreclosure proceedings as against Plaintiff, Ms. Rhodes, by filing an Order of Notice dated February 14, 2011, and recorded on May 16, 2011.

11. At the present time, where Option One allegedly assigned Ms. Rhodes mortgage to US Bank, and where US Bank is not registered, nor licensed with NMLS, apart from the horrific, and unconscionable intimidation tactics being used by Ocwen to force Ms. Rhodes to vacate the property, US Bank according to G.L. c. 255E, §§3 and 4, Regulations promulgated by the Massachusetts Attorney General under 209 CMR §42.01, *et seq.*, 940 CMR §7.01, *et seq.*, 209 CMR §18.01, *et seq.*, 15 U.S.C. §1692, *et*

*seq.,* among others, presently lack standing (Reference is made to Exhibits U, V and X, herein).

12. Where there is an injunction against mortgages which originated with Option One, their assignee as a matter of fact and law should have complied with such Court Order, and more importantly, Ocwen, the alleged new loan servicer, should not be able to engage in conduct as described in ¶14 below, and should be found responsible for Ms. Rhodes' costs for such repairs, so the Property is habitable, as it was prior to Ocwen's borderline criminal conduct.

## OCWEN'S VIOLATIONS OF THE FDCPA

13. The Defendant, Ocwen, since they allegedly began servicing Plaintiff, Ms. Rhodes' loan, have conducted themselves in a manner utterly reprehensive to mankind, that is so extreme, outrageous and severely unconscionable, in an attempt to force Ms. Rhodes to vacate the Property, so they are able to wrongfully take possession.

14. Ocwen has (1) severed her water pipes to the property, and as such Ms. Rhodes has been living without any potable water, and is forced to use the "Y" to shower, as well as use the restroom; (2) Ocwen at their own volition, absent any form of court order to the contrary, changed the locks on her doors to the Property; (3) Ocwen, in an attempt to collect a debt they allege are owed to them as a loan servicer, incessantly calls, and terrorizes Ms. Rhodes, and most recently arrived at the Property at 4:00 a.m., attaching notice to her door.

15. Under both the Federal Debt Collection Practices Act, 15 U.S. C. §1692, *et seq.*, as well as the regulations promulgated by the Massachusetts Attorney General, Martha Coakley, under 940 CMR §7.01, *et seq.,* 209 CMR §18.01, *et seq.*, G.L. c. 93, §24A, prohibits such

unfair or deceptive acts or practices and such unfair or deceptive acts are strict violations of G.L. c. 93A, §2, *et seq.*, among others.

## STATEMENT OF CLAIMS

### COUNT I
### INJUNCTIVE RELIEF

16.   Ms. Rhodes repeats, realleges and reavers the allegations contained in paragraphs 1 through 16 of her Verified Complaint as if fully stated herein.

17.   Ms. Rhodes seeks an emergency ex parte temporary restraining order, and, thereafter, a preliminary and permanent injunction, restraining and enjoining the Defendants, and each of them, from engaging in the wrongful acts described above, or any other or related acts, and prohibiting Defendants from contacting, harassing, striking, threatening, telephoning, or otherwise harassing Ms. Rhodes, including but not limited to restraining and enjoining the Defendants from directly or indirectly, commencing wrongful foreclosure in lieu of Option One injunction as described above, foreclosing, causing to be foreclosed, selling, transferring, developing, encumbering, wasting or otherwise disposing of the parcels of land, more particularly described in Exhibit Y.

18.   Based on the foregoing facts, Ms. Rhodes has a reasonable likelihood of succeeding on the merits of her claims at trial.  There is a substantial risk that Ms. Rhodes will suffer irreparable harm if the injunction is not guaranteed because for which Plaintiff, has no adequate remedy at law.  A balancing of the equities demonstrates that injunctive relief is appropriate because Ms. Rhodes stands to suffer irreparable injury if the requested relief is not granted.

19.   The decision to grant a temporary restraining order or preliminary injunction is left to the sound discretion of the trial judge. *Commonwealth v. Mass. CRINC*, 392 Mass. 79, 86-87

(1984); *Packaging Indus. Group, Inc. v. Cheney*, 380 Mass. 609, 615 (1980).   To

succeed, the moving party must show a likelihood of success on the merits and a

substantial risk of irreparable harm to the moving party if the requested relief is not

granted.   *Healey v. Commissioner of Public Welfare*, 414 Mass. 18, 20-21 (1992);

*CRINC*, 392 Mass. at 87-88; *Cheney*, 380 Mass. at 617.  The judge must then balance the

risk of irreparable harm to the moving party if the relief is not granted, against any

similar risk to the other party if the relief is granted. *Healey*, 414 Mass. at 20-21 (1992);

*CRINC*, 392 Mass. at 87-88; *Cheney*, 380 Mass. at 617.  If the balance of these risks cuts

in favor of the moving party, the judge may issue an injunction. *Healey*, 414 Mass. at 20-

21 (1992); *CRINC*, 392 Mass. at 87-88; *Cheney*, 380 Mass. at 617.

### COUNT II
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### AND CONSUMER PROTECTION ACT

20.   Ms. Rhodes repeats, realleges and reavers the allegations contained in paragraphs 1

through 20 of her Verified Complaint as if fully stated herein.

21.   Defendants represent, expressly or by implication, that they are a licensed and registered

as a bank licensed and registered to do business in the Commonwealth of Massachusetts,

committed to bringing quality, personalized banking to all the markets.

22.   In truth, Defendants are not committed to quality service; with a team of businesses,

attorneys and brokers, they target distressed homeowners, offer bad loans, have

wrongfully attempted to foreclose on the Property for which there is an injunction against

the, be it Option One, and/or its assignees from engaging in the same, and thereafter sell

the mortgagor's loans to servicers, such as Ocwen who blatantly fail to comply with any

of the laws promulgated by this Commonwealth, and harass, intimidate and torcher

9

homeowners. Ms. Rhodes relies on her Exhibits attached hereto and incorporated herein, as well as the gravamen of her Verified Complaint stated above, including but not limited to the herein paragraphs of this complaint above and below, all of which Ms. Rhodes hereby incorporates by reference.

23.   Therefore, the representations made by Defendants, as set forth in this Verified Complaint, are false and misleading and constitute deceptive acts or practices in violation of the Federal Debt Collection Practices Act under 15 U.S.C. §1692, *et seq.*, G.L. c. 255E, §§3 and 4, 209 CMR §42.01, *et seq.*, the Massachusetts Attorney General's Regulations under 940 CMR §7.01, *et seq.*, 209 CMR §18.01, *et seq.*, including but not limited to G.L. c. 183C, G.L. c. 140D, G.L. c. 93A, §2, *et seq.*, as the same are strict violations of the Massachusetts Consumer Protection Act, among others.

<u>COUNT III</u>
<u>CONSUMER INJURY</u>

24.   Ms. Rhodes repeats, realleges and reavers the allegations contained in paragraphs 1 through 24 of her Verified Complaint as if fully stated herein.

25.   Ms. Rhodes, as well as consumers throughout the United States have suffered and continue to suffer substantial monetary loss as a result of the Defendants' violations of the FDCPA, whether Federal or State, e.g., Commonwealth of Massachusetts.  In addition, the Defendants have been unjustly enriched as a result of their unlawful acts and practices.  Absent injunctive relief by this court, the Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

26.   Under the Federal Debt Collection Practices Act under 15 U.S.C. §1692, *et seq.*, G.L. c. 255E, §§3 and 4, 209 CMR §42.01, *et seq.*, the Massachusetts Attorney General's Regulations under 940 CMR §7.01, *et seq.*, 209 CMR §18.01, *et seq.*, including but not

limited to G.L. c. 93A, §2, *et seq.*, G.L. c. 184, §15, G.L. c. 244, §14, G.L. c. 244 §§35A and 35B, among others, the Defendants are the proximate cause of grave injury to Ms. Rhodes, as well as other innocent consumers in this Commonwealth.

27.    This Court is empowered to grant injunctive and other relief, as the court deems appropriate, to halt and redress violations of FDCPA violations, and others as are more fully described herein. The court, in the exercise of its equitable jurisdiction, may award other ancillary relief, including but not limited to, rescission of contracts and restitution, and the disgorgement of ill-gotten gains, to prevent and remedy injury caused by Defendants' violations as described herein.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Lynne A. Rhodes, pursuant to FDCPA 15 U.S.C. §1692, *et seq.*, the Commonwealth of Massachusetts Attorney General, Martha Coakley's Regulations under 940 CMR §7.01, *et seq.*; 209 CMR §18.01, *et seq.*; The Massachusetts Consumer Protection Act under G.L. c. 93A, §2, *et seq.*; The Massachusetts Home Loan Predatory Act under G.L. c. 183C, §1, *et seq.*; 209 CMR 32.01, *et seq.*; G.L. c. 255E, §§3 and 4; 209 CMR §42.01, *et seq.*; G.L. c. 223A, §3, *et seq.*; Regulation of Trade and Certain Enterprises under G.L. c. 93, §24A; Truth In Lending Act, under G.L. c. 140D, §1, *et seq.*, G.L. c. 184, §15; G.L. c. 244, §14; G.L. c. 244, §§35A and 35B, among others, and this Honorable Court's equitable powers, requests that this court:

1.    Issue a temporary Restraining Order, and a Preliminary and Permanent Injunction, restraining and enjoining Defendants and each of them, from engaging in the wrongful acts described above, or any other related acts, and prohibiting Defendants from

11

contacting, harassing, striking, threatening, telephoning, or otherwise harassing petitioner;

2. Award Plaintiff such preliminary and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions;

3. Award such relief as the court finds necessary to redress injury to consumers resulting from Defendants' violations of above, including, but not limited to, rescission or reformation contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

4. Award Plaintiff compensatory damages for damage to the Property, making it uninhabitable, the costs of such necessary repairs, including the cost of a habitable place to reside until such time as those damages proximately caused by Defendants are repaired, and are in working order;

5. Award Plaintiff punitive damages, according to proof;

6. Award Plaintiff the costs of bringing this action, reasonable attorney fees, including double or treble damages where applicable under G.L. c. 93A, §2, *et seq.*, among other statutory violations herein mentioned, in addition to accrued interest, as well as such additional equitable relief as the court may deem just and proper.

JURY DEMAND

Plaintiffs claim trial by Jury on all triable Counts of this Complaint.

Respectfully submitted,
Lynne A. Rhodes, Plaintiff
by her attorney,

_____
Elana Mikelus Gordon, Esquire
Law Office Of Elana Mikelus Gordon
119R Bradford Street Extension
PO Box 529
Provincetown, MA  02657
Email:       emikelus@me.com
Telephone:   (774) 538-6154
Facsimile:   (774) 538-6152
BBO No.:  684107

Dated:  September 23, 2013

## VERIFICATION AND AFFIDAVIT

I, Lynne A. Rhodes, hereby depose and state as follows:

1.     I am the Plaintiff in the above-captioned case.

2.     I have read the Verified Complaint filed herein and, knowing the contents thereof, have found that the allegations of fact set forth therein are based on my own personal knowledge and are true, except as to those allegations based on information and belief, which I believe to be true.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 23rd DAY OF SEPTEMBER, 2013.

_____
Lynne A. Rhodes, Plaintiff

13

## CERTIFICATE OF SERVICE

I hereby certify that the above document is being served within the time required by the Superior Court Standing Order No. 1-88 or by leave of the Regional Administrative Justice. I further certify that I, Elana Mikelus Gordon, Esq., attorney for the Plaintiff, Lynne A. Rhodes, hereby certify that on this day, the September 23, 2013, I caused a true copy of the attached Order regarding Plaintiff's Ex Parte hearing on Plaintiff's Verified Complaint And Jury Demand to be served to Defendants via certified mail return receipt requested to the following:

1.   Ocwen Loan Servicing, LLC, with a principal office located at, 1661 Worthington Road, Suite 100, West Palm Beach, Palm Beach County, Florida 33409, by causing a true copy to be served to its Registered Agent in the Commonwealth of Massachusetts is CORPORATION SERVICE COMPANY, with an address of 84 State Street, Boston, Suffolk County, Massachusetts 02109.

2.   OPTION ONE MORTGAGE CORP, with a former principal office located at 6501 Irvine Center Drive, Irvine, Orange County, California  92618, and a former Massachusetts location of 200 Foxborough Boulevard, Foxborough, Norfolk County, Massachusetts 02035, by causing a true copy to be served to its Registered Agent was CT CORPORATION SYSTEM, located at 155 Federal Street, Suite 700, Boston, Suffolk County, Massachusetts 02110.

3.   OPTION ONE MORTGAGE CORPORATION (INDIA), with a foreign address of TOWER VI – LEVEL 4 CYBERCITY MAGARPATTA CITY, HADAPSAR, PUNE, MAHARASHTRA, 411 013 IND; with a Massachusetts location of 155 Federal Street, Boston, Suffolk County, Massachusetts 02110, by causing a true copy to be served to its Registered Agent is CT CORPORATION SYSTEM, located at 155 Federal Street, Boston, Suffolk County, Massachusetts 02110.

14

4.    Sand Canyon Corporation, FKA Option one Mortgage Corporation (reference is
made to Exhibit B, *supra*, herein), to its Registered Agent is CT CORPORATION
SYSTEM, located at 155 Federal Street, Boston, Suffolk County, Massachusetts
02110; and

5.    U.S. Bank National Association, as Trustee for Structured Asset Securities
Corporation, Mortgage Pass-Through Certificates, Series 2006-BC6, c/o American
Home Mortgage Servicing, Inc., located at 1525 South Beltline Road, Coppell, TX
75019.  There is no Registered Agent Listed for U.S. Bank National Association.

Elana Mikelus Gordon, Esq.
BBO NO.:  684107

A true copy by photostatic process
Attest:
Asst. Clerk

15

EXHIBIT A

ATLAS TITLE & ABSTRACT
ATTORNEY CHARLES P. BALL

Loan Number: 381029157
Servicing Number: 002214659-1

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on         August 21, 2006                . The mortgagor is
LYNNE A RHODES  SOLE (INDIVIDUAL)

("Borrower"). This Security Instrument is given to
       Option One Mortgage Corporation, a California Corporation                         ,
which is organized and existing under the laws of         CALIFORNIA            , and whose address is
             3 Ada, Irvine, CA  92618
("Lender"). Borrower owes Lender the principal sum of
       TWO HUNDRED SIXTY FOUR THOUSAND FIVE HUNDRED SEVENTY FIVE
       . . . AND NO/100THs  Dollars (U.S.  $264,575.00              ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on         September 01, 2036            .This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described
property located in        Worcester                                                      County, Massachusetts:
MAP 77 BLOCK 15

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of          234  DANIELS STREET, FITCHBURG
                                                                                          [Street, City]
Massachusetts        01420-              ("Property Address");
                     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.
All of the foregoing is referred to in this Security Instrument as the "Property."
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and
will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
COVENANTS. Borrower and Lender covenant and agree as follows:

may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release,

21. **Acceleration; Remedies.** If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter exercise the statutory power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. **Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. **Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

26. **Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. **Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

28. **Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. **Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. **Lost, Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. **Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

32. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
LYNNE A RHODES          -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower


**COMMONWEALTH OF MASSACHUSETTS,**                    County ss: *Worcester*

On this *21st* day of *August, 2006*, before me, the undersigned notary public, personally appeared

*Lynne A. Rhodes*

proved to me through satisfactory evidence of identification, which was/were *MA Driver's License*, to be the person(s) whose name(s) is signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires:
(Seal)

_____
Notary Public



WILLIAM S. AHALT
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
MY COMMISSION EXPIRES 03/08/2007

Loan Number:  381029157      Servicing Number:  002214659-1      Date:  08/21/06

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made August 21, 2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
             Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

              234  DANIELS STREET,  FITCHBURG, MA 01420-

                           [Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**The Note** provides for an initial interest rate of        9.150%         . The
Note provides for changes in the interest rate and the monthly payments, as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of   September 01  2008     ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding
    SIX AND 10/100                          percentage point(s) ( 6.100%    )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                          USRI0021 (02-23-99)

Loan Number: 381029157      Servicing Number: 002214659-1      Date: 08/21/06

be my new interest rate until the next Change Date.

    The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

    The interest rate I am required to pay at the first Change Date will not be greater than 12.150%  or less than  9.150% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than  15.150%  or less than  9.150% .

### (E) Effective Date of Changes

    My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

    The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Covenant 17 of the Security Instrument is amended to read as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

    To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan Number: 381029157      Servicing Number: 002214659-1      Date: 08/21/06

      BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)       _____(Seal)
LYNNE A RHODES

_____(Seal)       _____(Seal)

_____(Seal)       _____(Seal)

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
       USRI0023 (02-23-99)

Loan Number: 381029157       Servicing Number: 002214659-1     Date: 08/21/06

# 1-4 FAMILY RIDER
## Assignment of Rents

THIS 1-4 FAMILY RIDER is made     August 21, 2006          , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

Option One Mortgage Corporation, a California Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

234  DANIELS STREET,  FITCHBURG, MA 01420-

(Property Address)

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.     ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: Building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B.     USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C.     SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D.     RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Covenant 5.

**E.     "BORROWER'S RIGHT TO REINSTATE" DELETED.** Covenant 18 is deleted.

**F.     BORROWER'S OCCUPANCY.** Unless lender and Borrower otherwise agree in writing, the first paragraph in Covenant 6 concerning Borrower's occupancy of the property is deleted. All remaining

**MULTISTATE 1-4 FAMILY RIDER**
Page 1 of 3                                                                              USR1001.wp (11-19-04)

Loan Number: 381029157      Servicing Number: 002214659-1      Date: 08/21/06

Covenants and agreements set forth in Covenant 6 shall remain in effect.

**G.      ASSIGNMENT OF LEASES.**  Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property.  Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion.  As used in this paragraph F, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.      ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**  Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable.  Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents.  However, Borrower shall receive the Rents until (i) Lender has  given Borrower notice of its intention to receive Rents after a default by borrower under the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent.  This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of its intention to receive Rents to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower.  However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs.  Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This Assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.      "ASSIGNMENT OF RENTS" MODIFIED.**  Any Covenant of the Security Instrument granting an Assignment of Rents to Lender is superseded by this Rider.

**J.      CROSS-DEFAULT PROVISION.**  Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

**MULTISTATE 1-4 FAMILY RIDER**
Page 2 of 3                                                                                    USR1001.wp (11-19-04)

Loan Number: 381029157      Servicing Number:  002214659-1      Date:  08/21/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____      _____
LYNNE A RHODES                Borrower                                    Borrower

_____      _____
                              Borrower                                    Borrower

_____      _____
                              Borrower                                    Borrower

**MULTISTATE 1-4 FAMILY RIDER**
Page 3 of 3

USR1001.wp (11-19-04)

*Exhibit A*

A certain tract of land with all the buildings thereon, situated on the westerly part of said Fitchburg on Daniels Street, bounded and described as follows;

BEGINNING   at the northwesterly corner thereof on the line of said street and at land now or formerly of Andrew Pratt;

THENCE   South 88 degrees 43' East on said street fifty (50) feet to a bound at land now or formerly of John E. Daniels;

THENCE   South 1 degree 17' West by said Daniels land ninety (90) feet to a stone bound at land now or formerly of John H. Daniels;

THENCE   North 88 degrees 43' West by said Daniels land fifty (50) feet to a bound of land of said Pratt;

THENCE   North 1 degree 17' East by said Pratt land ninety (90) feet to the place of the beginning.

Containing 4,458 square feet of land.

There is excepted from the above described premises so much of the above land as was taken by the City of Fitchburg, Massachusetts, for the widening of Daniels Street and Clarendon Street, Fitchburg, Massachusetts, as set forth in Notice of Taking recorded in the Worcester Northern District Registry of Deeds in Book 411, Page 571

See deed in Book 6214, Page 203.

ATTEST: NO. WORC. REGISTRY OF DEEDS
JOHN B. McLAUGHLIN, REGISTER

EXHIBIT B

Bk 7362 Pg70   #2562
02-15-2011 @ 01:47p

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that **Sand Canyon Corporation FKA Option One Mortgage Corporation**, which is organized and existing under the laws of United States of America

FOR GOOD AND VALUABLE CONSIDERATION RECEIVED, hereby grants, assigns and transfers to

**U.S. Bank National Association, as Trustee for Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-BC6,** c/o American Home Mortgage Servicing, Inc. located at 1525 South Beltline Road, Coppell, TX 75019

All of the right, title, and interest that Assignor has as current holder of the following Mortgage:

| | |
|---|---|
| Mortgage Date: | August 21, 2006 |
| Original Mortgagee: | Option One Mortgage Corporation |
| Original Mortgagors: | Lynne A. Rhodes |
| Recorded: | with the Worcester County Registry of Deeds (Northern District) |
| | Book: 6214   Page: 206 |
| Property Address: | 234 Daniels Street, Fitchburg, MA 01420; |

*234 Daniels Street, Fitchburg, MA 01420* (left margin, vertical)

IN WITNESS WHEREOF, Sand Canyon Corporation FKA Option One Mortgage Corporation has caused these presents to be signed by its duly authorized officer and its corporate seal to be hereunto affixed, this 3 day of December , 2010

ABLITT LAW OFFICES PC
304 CAMBRIDGE ROAD
WOBURN, MA 01801

96.2749-Rhodes



IN THE PRESENCE OF:

Sand Canyon Corporation FKA
Option One Mortgage Corporation

Witness: _Desmond Mckelvie_

Name: _____
        Andrew Fuerstenberger

Title: _____
     Vice President

STATE OF ____Florida____
County of ____Duval____

On _December 3, 2010_ before me, ___LUBICA V. SIMON___ personally appeared
     Andrew Fuerstenberger _____ personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC SIGNATURE



**LUBICA V. SIMON**
MY COMMISSION # DD661957
EXPIRES April 11, 2011
(407) 398-0153   FloridaNotaryService.com

NOTARY PUBLIC SEAL

ATTEST: NO. WORC. REGISTRY OF DEEDS
KATHLEEN REYNOLDS DAIGNEAULT, REGISTER

96.2749-Rhodes

EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS
## LAND COURT
### DEPARTMENT OF THE TRIAL COURT

(SEAL)

TO:

Bk 7408 Pg338  #7227
05-16-2011 @ 01:56p

Lynne A. Rhodes

LAND COURT
FILED

CASE NO. 11 FEB 14 AM 9: 33
11 MISC 445377



U.S. Bank National Association, as

and to all persons entitled to the benefit of the Servicemembers Civil Relief Act.

U.S. Bank National Association, as Trustee for Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-BC6

claiming to be the holder of          Mortgage
covering real                         property in Fitchburg
                                      numbered 234 Daniels Street

given by Lynne A. Rhodes to Option One Mortgage Corporation dated August 21, 2006, and recorded with the Worcester County (Northern District) Registry of Deeds at Book 6214, Page 206, and now held by Plaintiff by assignment

have filed with said court a complaint for authority to foreclose said mortgage

in the manner following: by entry and possession and exercise of power of sale.

If you are entitled to the benefits of the Servicemembers Civil Relief Act and you object to such foreclosure you or your attorney should file a written appearance and answer in said court at Boston on or before

MAY 3 0 2011
or you may be forever barred from claiming that such foreclosure is invalid under said act.
Witness, KARYN F. SCHEIER Chief Justice of said Court on

APR 1 3 2011

Attest:

A TRUE COPY
ATTEST:

*Deborah J. Patterson*
RECORDER

DEBORAH J. PATTERSON
RECORDER

ABLITT/SCOFIELD
304 CAMBRIDGE ROAD
WOBURN, MA 01801

962789-Rhodes
C 96.0638

ATTEST: NO. WORC. REGISTRY OF DEEDS
KATHLEEN REYNOLDS DAIGNEAULT, REGISTER

# EXHIBIT D



EXHIBIT E



# EXHIBIT F



EXHIBIT G



EXHIBIT H



# EXHIBIT I



EXHIBIT J



# EXHIBIT K



EXHIBIT L

